148 So.2d 656

Casper FERRELL

v.

STATE.

5 Div. 615.

Court of Appeals of Alabama.

Jan. 8, 1963.

D. T. Ware, Roanoke, for appellant.

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Montgomery, Legal Research Aide, for the State.

CATES, Judge.

Two indictments combined for trial: (1) second degree burglary and grand larceny; (2) arson in the first degree. Verdicts: guilty. Punishment: three and five years under respective sentences.

The tendencies of the State's evidence were:

On the night of November 5, 1960, about ten, P.M., Joe Smith and Howard Lane, fourteen and fifteen years of age at the time, were outside the Martin Theatre in Roanoke where Lane worked as an usher.

Smith and Lane, seeking a ride home, were offered a lift by the occupants of a car in which were Ferrell and his co-indictee, Henry Alias Kirby. Younger brothers of both Ferrell and Kirby were also along.

The quintet drove out of town, and somewhere along the road stopped the car. Ferrell and Kirby went back of the car and, summoning Joe Smith, held a knife at his stomach and threatened him. They came back to the car and also threatened Lane. Death or grievous bodily harm was held over the boys if they did not help them and keep quiet.

The party then drove to a small house rented by Mr. W. B. Shelnutt, who lived on Mr. Ernest Shifflett's place in a four room house—part frame with a fireplace room of logs. The house was without electricity.

Mr. Shelnutt had left that afternoon late or early night. There was then no fire in the house. He went into town about sundown. All doors to the house had been fastened and the main door was locked. Mr. Shelnutt returned home close

to midnight and found the house burning.

In the house were two shotguns, a clock, a cigarette lighter, the furniture, clothes and money. Although Mr. Shelnutt and the sheriff searched the ashes, none of these were discovered.

Count 2 of the first indictment charged Ferrell and Kirby with larceny (from a dwelling house) of one 12 gauge double barrel shotgun of the value of Five Dollars and one 12 gauge single barrel shotgun of the value of Fifteen Dollars, Twenty Dollars in all, the personal property of Mr. W. B. Shelnutt.

Joe Smith testified that he was made to knock on the door so as to see if anyone was at home. No one having answered the door, Ferrell took a bumper jack and knocked the top of a window out of its frame. Ferrell, "Alias" Kirby and Smith went in the house. Smith, on cross, testified he did not see anybody "fire" the house. However, on redirect, he stated he saw a gallon jug of kerosene "in their hands" as he left.

Moreover, agency to arson could be inferred from Smith's testimony that "Alias" twice fired a shotgun through the house.

Leaving, the trio went toward the car in which the brothers of Ferrell and Kirby were waiting. The younger Ferrell was behind the wheel and Burl Kirby and Howard Lane were passengers. It could be inferred that these boys acted as lookouts. While the elder Ferrell and the elder Kirby remained in Shelnutt's house, the boys in the car drove up the road near a barn, turned around and came down and picked up the two men. At this time the house was seen to be on fire.

In brief the Attorney General argues:

"In this case there is no evidence to contradict the testimony of Joe Smith and Howard Lane that they were compelled, against their will, to participate in the crimes charged. There

is also on Record Page 49, statements by Casper Ferrell indicating *that he was guilty of the charges made, that he would be sent to the penitentiary, and that when he returned he would get even with Joe Ferrell for telling on him.* * * *" (Italics added.)

On page 49, just after the statement alluded to, appears a motion to exclude which the court granted. We cannot use excluded evidence for review under Code 1940, T. 15, § 389.

The Attorney General would also supplement the testimony of Smith and Lane with the following excerpt from that of Mr. Shelnutt:

"Q Had you seen them [Ferrell and 'Alias' Kirby] any time immediately prior to November the 5th?

"A Yes, sir, a few nights before then.

"Q All right, where were they at the time you saw them?

"A They was in a car sitting out there in the road at the place where I lived.

"Q State whether or not anything took place between you and them on that occasion?

"A Nothing more than I told them if they was some of the drunks that come around there any more I'd fill them full.

"Q All right, did they leave?

"A Soon afterwards, yes, sir."

We consider there was no corroborative evidence tending to connect Ferrell with the commission of the felonies charged. In Sorrell v. State, 249 Ala. 292, 31 So.2d 82, Simpson, J., prescribes the following formula: (1) Eliminate the accomplice's testimony; (2) test the rest.

Here, however, since the jury could have inferred that Smith and Lane par-

ticipated *involuntarily,* we hold corroboration unnecessary.[1] At common law, the testimony of the victim of rape need not be corroborated. Boddie v. State, 52 Ala. 395; Barnett v. State, 83 Ala. 40, 3 So. 612. Hence, a verdict of guilt of rape rejects consent. This analogy may not be precise but it sheds light.

If Smith and Lane are not in complicity with Ferrell and Kirby, there is no field of operation for Code 1940, T. 15, § 307. It would be otherwise if Smith and Lane's own testimony admitted their guilt.

The judgments appealed from are

Affirmed.

1. In oral charge the court below stated: "Now then, gentleman, there's one or two things that occurred in the trial that ought to be explained to you. One is that the law of this land provides that a defendant shall never be convicted on the uncorroborated testimony of an accomplice. You, of course, will pass on that. * * * "