326 So.2d 686

**Eva Austin WILLIAMS, alias Coony Williams**

v.

**STATE.**

**6 Div. 865.**

Court of Criminal Appeals of Alabama.

Dec. 9, 1975.

On Rehearing Ex Mero Motu Denied Jan. 16, 1976.

Ralph C. Burroughs, Public Defender, James P. Smith, Third Year Law Student, Tuscaloosa, for appellant.

**160**

William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State, appellee.

LEIGH M. CLARK, Supernumerary Circuit Judge.

On separate indictments, one charging defendant-appellant with an assault with intent to murder Leonard M. Euler and the other with the crime against nature with Leonard M. Euler, the cases were consolidated for trial by agreement of the parties and the jury returned verdicts of guilt in both cases. His punishment was fixed at imprisonment in the penitentiary for twelve years in the assault with intent to murder case and for five years in the crime against nature case. The cases are submitted on appeal on a consolidated record and briefs of attorneys for the parties.

Euler was a patient at Bryce Hospital and, in an effort to go therefrom to his home in Birmingham he asked one of a group of men in an automobile for a ride. According to Euler, defendant was asleep in the back seat of the automobile and appeared to be intoxicated at the time. Euler further testified that he offered the men some money to take him to Birmingham and that they agreed to take him to Bessemer, but that they drove him to what he afterwards learned was appellant's home in Brookwood, in Tuscaloosa County. During the trip Euler said he consumed several beers. As they arrived at appellant's house, it seemed that appellant had locked himself out of his dwelling and that some of the occupants of the automobile attempted to break into the house. One occupant, Gary Mahan, gave Euler a tire tool in order to attempt to break the lock on one of the doors. Meanwhile, appellant, who had gained entrance through the back door, observed Euler trying to break the lock with a tire tool, took the tire tool away from Euler and hit him on the head. Thereafter, they all went into the bedroom of the house, where Mahan proposed sexual intercourse in the presence of defendant and Cecil Higginbotham, who had been in the automobile with them. Mahan started beating on him; the others did not hit him. He said there was some anal penetration by Mahan.

Mahan testified as a witness for the State, he having been indicted in a separate indictment for carnal knowledge of Euler. He said he was drunk at the time. Although defendant did not personally commit the unnatural act, Mahan, as well as Euler, testified in detail that defendant was present at the time and aiding Mahan in his criminal conduct. Mahan testified that the defendant made the proposal to

Euler. He testified that all had been drinking. He further testified that he applied a lighted cigarette to defendant's buttocks, which according to a physician who examined Euler after the incident:

". . . [W]ould tend to overcompensate or overtrigger the nervous impulse that go to the rectal sphincter. This is a muscle that holds the rectum together and if you excite the nerves to this muscle often enough, then you pass a threshold that they can be excited and the muscle relaxes."

The other occupant of the automobile, Cecil Higginbotham, testified that after they went into the house defendant told Euler that he would teach him "the way they do it in prison," referring to the particular form of sexual perversion involved. He said he was not in the house at the time of the alleged act of carnal knowledge. He said he saw defendant hit Euler with the tire tool, which he testified that defendant obtained from the automobile.

■ We see no need to discuss further the repulsive testimony as to the crime against nature charge. To be·added to our summary of the evidence as to the assault with intent to murder charge, we note that pictures of Euler taken soon after he went to the hospital for his injuries show that he received a severe injury to his head. We are convinced that the evidence amply supports the verdict of guilty in each case.

■ Before arraignment of defendant was completed, he was presented a written detailed explanation of rights in each case, which he and his appointed attorney acknowledged in writing. In the crime against nature case, it was erroneously stated that the minimum punishment was imprisonment in the penitentiary for "one year" instead of "two years" as provided by Code of Alabama 1940, Title 14, Section 106. In all other respects the explanation of rights in each case was accurate. Appellant urges that the mistake made in this particular constituted reversible error in the crime against nature case. Communication to an accused of information of minimum and maximum possible sentences is a prerequisite to the acceptance of a guilty plea. *Carter v. State,* 291 Ala. 83, 277 So.2d 896. The principle was subsequently applied in *Moore v. State,* 54 Ala. App. 463, 309 So.2d 500, and appellant seeks to avail himself of language in that opinion wherein the court, in emphasizing the reason for requiring such information before accepting a plea of guilty, said that defendant would thereby have an opportunity to give as adequate consideration to the possible extremity of the consequence if he pleads not guilty as if he pleads guilty "so that he can determine voluntarily and intelligently whether he is willing to risk such punishment by a trial on a plea of not guilty." This, however, was said in the context of a plea of guilty. A similar reason does not apply to the acceptance of a plea of not guilty. In fact, the court has no discretion in the matter of the acceptance of a plea of not guilty. A trial judge is not required to inform defendant as to the consequences of a plea of not guilty when there is not before the court a proposal or an offer to plead guilty. There was no such proposal or offer in this case. In this circumstance the action of the court in advising defendant on the subject of the minimum and maximum punishment was supererogatory. By no stretch of reason can we find that defendant was in any way prejudiced by the inaccuracy.

■ If Euler consented to the unnatural intercourse by Mahan, as to which there was evidence that defendant was an abettor, Euler would have also been guilty of a crime against nature. As to defendant, he would have been an accomplice, but if he did not consent, or if his consent was forced or coerced by fear or duress, he was not an accomplice, and his testimony did not require corroboration to sustain a conviction of defendant on that charge. *LaBryer v. State,* 45 Ala.App. 33, 222 So. 2d 361. There was strong evidence that

Euler was not an accomplice, that he did not voluntarily consent to the carnal act.

 In connection with the question whether Euler was an accomplice, appellant urges that certain written charges requested by him as to an accomplice should have been given. In Charge X, Euler is categorized as an accomplice, which of itself justified its refusal. In VIII and IX, Mahan and Higginbotham are referred to respectively as accomplices. The testimony of neither should have been singled out as that of an accomplice requiring corroboration. Where one witness who is not an accomplice testifies as to all essential facts, there is no necessity for an attempted application of the rule to another witness who is an accomplice.[1] In none of the requested charges does the defendant in effect request that the court instruct the jury that if Euler was an accomplice the jury could not convict defendant of the charge of the crime against nature on his testimony alone or upon his testimony without corroboration. Nor was any charge requested substantially the same as the charge (Charge 2) that was held to have been erroneously refused in *LaBryer v. State, supra.*

At the conclusion of the oral charge, defendant excepted to "the fact the court failed to charge the jury as to an attempt in the case of sodomy." The trial court did not charge the jury as to an attempt to commit sodomy or a crime against nature. Appellant urges that the court's failure to so charge the jury constituted prejudicial error. The State urges that the evidence would not support a finding of a mere attempt, that if the testimony as to what occurred is believed, the crime expressly charged was consummated. The evidence showed that Mahan had entered a plea of guilty to the charge of "sodomy" and that he testified in this case. Euler testified that there was penetration. We see little,

if any, basis for a contention that there was a mere attempt. To have justified an instruction as to an attempt the evidence must have furnished reasonable support for the contention that Mahan's conduct, as to which defendant was found guilty as an abettor, fell short of the crime expressly charged. *Stovall v. State,* 34 Ala.App. 610, 42 So.2d 636. Moreover, defendant requested in writing a charge that unless the jury "finds proof of penetration, it must acquit the defendant." Even though the written charge was refused by the trial court, it did charge the jury orally that penetration was essential to a conviction in the case, which in effect constituted an instruction in accord with the written charge requested, which would have been contrary to any charge to the effect that defendant could have been convicted of an attempt.

 There are times when it is to the best interest of defendant in a criminal case to have a jury instructed as to an attempt or any other lesser included offense. On the other hand, there are times when it is to the best interest of defendant for the case to go to the jury on the issue as to the express charge only. If the evidence reasonably supports a position that he was not guilty of the express charge but that he was guilty of a lesser included charge, he is entitled to instructions as to the lesser included charge or charges, but he is not entitled to inconsistent charges on the subject, one in effect saying that there can be a "not guilty" verdict if he has not committed the offense expressly charged and the other saying that there can be a "guilty" verdict, even though he has not committed the offense expressly charged but has committed a lesser included offense. He may be entitled to one of the two at times, but he is never entitled to both. We find no error in the action of the trial court as to the question of a lesser included offense in the "sodomy" case.

---

1. To avoid confusion, it is to be noted that "accomplice" has two distinct fields of consideration and application in this case: (1) Whether defendant was an accomplice of Mahan so as to warrant defendant's conviction and (2) Whether Euler was an accomplice of Mahan so as to require corroboration of his testimony.

In the assault with intent to murder case, the court did orally charge as to the lesser included offense of assault and battery. Defendant reserved no exception to any of the court's charge in this respect. He requested two written charges in that case which were refused. One was clearly covered by the oral charge. The other was:

"II

"I charge you that voluntary drunkenness is no excuse for a crime involving a specific intent, regardless of the defendant's resulting mental condition, though such drunkenness may negate the intent, consequently reducing the offense from assault with intent to murder to assault and battery."

Although there was some evidence that defendant was intoxicated at the time he struck Euler over the head with the tire tool, it is far from conclusive that he was so drunk "as to render impossible some specific mental condition which is an essential element of the criminal act." The requested charge was not predicated upon such a state of intoxication and was properly refused. *Walker v. State,* 91 Ala. 76, 9 So. 87 (1890); *Beasley v. State,* 53 Ala. App. 488, 301 So.2d 252 (1974).

Over the objection of defendant, the court admitted in evidence photographs of Euler's buttocks taken while he was in the hospital after the alleged crimes. Appellant complains that the admission in evidence thereof constituted reversible error, that the probative value of the photographs was outweighed by their prejudicial effect by reason of their "gruesome and prejudice arousing" appearance. We think that the court, the jury, and we could have been well spared the necessity of viewing them, but having done so we are convinced that the trial court was not in error in admitting them.

The record recites that while a witness was testifying the trial judge addressed a bailiff, saying "that fellow back there keeps shaking his head. Take him out of the court room. All right, go ahead." We note no further reference to the incident in the record. In this brief he states:

"Appellant does not contend that the Court lacks the authority to eject someone from the courtroom who causes a disturbance. In this instance, however, the person who was ejected was an epileptic. He had a nervous twitch that caused his head to nod. This was an insufficient reason to have him ejected. For this error the convictions should be reversed."

Appellant contends that by the incident defendant was denied his right to a public trial. He cites the Sixth Amendment of the United States Constitution and Article I Section 6 of the Alabama Constitution of 1901. We see no need for indulging in the ramifications of the question whether a public trial is mandated in prosecutions in state courts by the Sixth Amendment or the Fourteenth Amendment of the Federal Constitution. 21 Am.Jur.2d, *Criminal Law,* § 257; 4 L.Ed.2d 2132. It suffices that the right to a public trial is guaranteed by Section 6 of the Constitution of Alabama of 1901 in all criminal prosecutions, other than those excepted by Section 169. That right has been zealously upheld by the appellate courts of the state of Alabama, but no authority is presented wherein the principle has been applied to a situation such as the one involved here. If the conduct of a spectator admitted to a criminal trial interferes with the administration of justice, he may be removed. Such removal does not constitute a denial of any right of the public or the accused to a public trial. 21 Am.Jur.2d, *Criminal Law,* § 264; *United States v. Kobli,* 172 F.2d 919 (3rd Cir.); *State v. Keeler,* 52 Mont. 205, 156 P. 1080. No showing is made to the effect that any removal of the spectator was not for the best interest of the defendant or that the trial judge in any way abused the discre-

tion vested in him to prevent a distracting influence that would interfere with the administration of justice.

■ Other asserted bases for reversal relate to portions of the oral charge of the court to which no exceptions were taken or objectons made. Such contentions of error are not reviewable on appeal. *Morris v. State,* 53 Ala.App. 236, 298 So.2d 658 (1974); *Loggins v. State,* 52 Ala.App. 204, 290 So.2d 665 (1974). The cases cited are in accordance with an unbroken chain of authorities extending back to at least the middle of the last century, as indicated in *McPherson v. State,* 198 Ala. 5, 73 So. 387 (1916).

The public defender representing appellant has presented, we believe, every conceivable question that could be raised, and he is to be commended for his efforts. In addition, we have undertaken to search further the record for error prejudicial to defendant and have found none.

The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

All the Judges concur.